## PETRAY VS. HOWELL.

Under *sections* 139 *and* 140, *chap.* 99, *Digest*, a justice's judgment, when the transcript thereof is filed in the office of the Clerk of the Circuit Court, becomes a lien upon the lands of the defendant—as well after acquired lands, as those owned by the defendant at the time—although the Clerk may neglect to enter such judgment in the docket of the Circuit Court for judgments and decrees—the entering of the Justice's judgment in the docket is not a condition precedent to the judgment lien, which attaches on the filing of the transcript.

A Court of Chancery will enforce a specific performance of a parol agreement for the division of land by those jointly interested, where there has been a part performance; but, in such case, it is necessary that both parties to the agreement, or those claiming under them, should be before the Court.

*Appeal from Pope Circuit Court in Chancery.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

This case was argued before Mr. Justice COMPTON and Hon. THOMAS JOHNSON, Special Judge. Mr. Chief Justice ENGLISH not sitting, and Mr. Justice RECTOR, absent.

JORDAN and WILLIAMS & WILLIAMS, for the appellants, contended that the lien of a Justice's judgment attaches upon the *filing* of the transcript, under the statute, and that the failure of the Clerk to docket the judgment as required by law, does not prevent the lien from attaching; and cited *Jones vs. Luck*, 7 *Mo. Rep.* 551; *Wineland vs. Coonce*, 5 *Mo. Rep.* 296; *Cowley vs. Wallace*, 12 *Mo. Rep.* 147; *Beverly vs. Ellis*, 1 *Ran. Rep.* 102.

Mr. Justice COMPTON delivered the opinion of the Court.

This was a bill in chancery, brought to recover the north-half of the north-east quarter of section 31, township 8 north, range 20 west. The Chancellor dismissed the bill, and Petray, the complainant below, appealed.

On the 6th March, 1841, William Ennis, and Josiah L. K. Honeycut, entered said quarter section at the proper land office of the United States, and took a joint certificate of entry, which, on the same day, they transferred by assignment, to Laban C. Howell and Alexander D. Crews. On the 1st of May, 1845, the land was patented to the assignees of the certificate, as tenants in common. Howell afterwards died, and, under an order of the Probate Court, his interest in the land—designated in the proceedings in that Court, as the north half of the quarter section—was sold, and the appellee became the purchaser. On the 6th of February, 1853, Crews, the other tenant in common, conveyed to the appellee, by quit claim deed, all his interest in the north half of said quarter section.

The appellant claims title as follows:

On the 24th November, 1838, Cyrus F. Smith recovered three several judgments, each for more than ten dollars, exclusive of costs, against Ennis, before a Justice of the Peace. Executions were issued on the judgments, and returned *nulla bona;* whereupon the appellant procured from the justice certified transcripts of the judgments, which he delivered to the Clerk of the Circuit Court, who, on the 23d April, 1839, filed them in his office, but omitted to enter them on the judgment docket. On

the 10th August, 1841, execution issued out of the Circuit Court on the judgments, and were levied on the undivided interest of Ennis, in said quarter section, which, on the 4th October, 1841, was sold under the executions, and Smith became the purchaser; who, on the 10th April, 1844, conveyed by deed of that date, to the appellant.

Did the mere filing of the transcript in the Clerk's office create a lien on Ennis' interest in the land? for, if it did, then the appellant has the superior title, as the assignment of the certificate of entry, under which the appellee derives his title, was made subsequent to that time. The land was entered after the transcripts were filed, but this did not make the lien the less operative; because, this Court held in *Trustees R. E. Bank vs. Watson & Hubbard*, 13 *Ark.* 74, that a judgment becomes a lien on after acquired lands.

We have seen that the Clerk omitted to enter the transcripts on the judgment docket. Was such entry essential to the creation of the lien?

*Section* 139, *chap.* 99, *of the Digest*, provides that "every Justice, on the demand of any person, in whose favor he shall have rendered judgment for more than ten dollars, exclusive of costs, shall give to such person a certified copy of such judgment, and the Clerk of the Circuit Court of the same county in which the judgment was rendered, shall, upon the production of such transcript, file the same in his office, and forthwith enter such judgment in the docket of the Circuit Court for judgments and decrees, and shall note therein the time of filing such transcript."

The 140th section provides that every such judgment "from the time of filing the transcript thereof," shall be a lien on the real estate of the defendant to the same extent as a judgment of the Circuit Court, and shall be carried into execution in the same manner. On a sound construction of these provisions of the statute, we think the act of entering the Justice's judgment in the judgment docket of the Circuit Court, is directory to the

Clerk, and not essential, or a condition precedent to the judgment lien, which attaches on the filing of the transcript.

It is insisted, however, for the appellee, that Ennis entered the land in his own name, with Howell's money, which raised a resulting trust in favor of Howell; and that, therefore, Ennis never had any interest in the land, on which the judgment lien could attach. In answer to this, it is enough to say, that the proof does not show that the land was purchased with Howell's money.

Upon the whole case, we are clearly of opinion that the appellant acquired a valid title to Ennis' interest in the land, but whether that interest was the north half of the quarter section, we will not decide, in the present state of the pleadings; because, although the bill alleges, and the proof tends to show that Ennis and Honeycut, at the time they purchased the land, entered into a parol agreement to so divide it, as that Ennis should have the north and Honeycut the south half of the quarter section, and that the agreement was, in part, performed, and although a Court of Equity would enforce the specific performance of such an agreement, notwithstanding the statute of frauds, as it would a parol agreement to convey lands where part performance was shown (*vide Goohue vs. Barnwell, Rice's Rep.* 236), yet, in the case before us, we will not so decree, for the reason that both the parties to the parol agreement, or those claiming under them, were not brought before the Court.

The decree of the Court below must be reversed, and the cause remanded for further proceedings.

Absent, Mr. Justice RECTOR.