CHURCHILL *v.* HILL.

Opinion delivered April 21, 1894.

*1. Bill of exceptions—Amendment.*

Where a motion for a new trial was filed and overruled, and exceptions thereto were duly saved, but the bill of exceptions failed to show such proceedings, the bill may, after lapse of the term, be amended *nunc pro tunc,* so as to render it complete and available.

2. *Attachment—Suppressing affidavit.*

    Under sec. 661, Code Pr., which provides that where a provisional remedy is granted upon an affidavit, and a motion is made to discharge or vacate it, the party against whom it is granted may require the production of the affiant for cross-examination, and " if the affiant is not produced his affidavit shall be suppressed, and if produced he may be examined by either party," *held*, that it is only where the affidavit might be used as evidence that it can be suppressed; and that if an attachment be issued on an affidavit, and the grounds of attachment be controverted, the affidavit cannot be used as evidence, and should not be suppressed because of plaintiff's failure to produce affiant for cross-examination.

3. *Assignment—Sale of choses in action illegal.*

    A deed of assignment which, among other things, conveys choses in action, and provides that all the property assigned, including the choses in action, shall be sold at public auction within 120 days, directs a disposition of the property assigned in a manner different from that prescribed by the statute, and is fraudulent.

Appeal from Jackson Circuit Court.

JAMES W. BUTLER, Judge.

*Yancey & Fulkerson* and *Morris M. Cohn* for appellants.

1. The court erred in refusing to suppress the affidavit of Joblin. Mansf. Dig. sec. 2916.

2. The first ground of attachment in the amended affidavit for attachment, *i. e.*, removal of property from the State, not leaving enough therein to pay their creditors, is not sustained by the evidence. The only removal was cotton shipped to appellees to pay their debt. 8 So. Rep. 674.

3. The provision in the assignment for a sale of the choses in action did not invalidate the assignment. Mansf. Dig. secs. 307-8-9; 37 Ark. 150; 39 *id.* 66; 53 *id.* 92; 107 U. S. 361.

4. Courts should construe contracts so as to sustain them, when it can be fairly done. Whart. Cont. secs. 654.

5. In this case the assignee collected all he could, and sold the rest, as provided by law. 4 U. S. App. 68, 71.

*Rose, Hemingway & Rose, Jas. W. Phillips* and *Robert Neill* for appellees.

1. The bill of exceptions contains no reference to the motion for a new trial, and preserves no exception to its overruling. 43 Ark. 391 and cases cited.

2. The *nunc pro tunc* order attempting to amend the bill of exceptions was beyond the jurisdiction of the court, and a nullity. 53 Ark. 250; 143 U. S. 293.

3. Section 2916, Mansf. Dig., applies only to *evidentiary* affidavits. When a controverting affidavit is filed, the affidavits then become the pleadings in the case. Mansf. Dig. sec. 381. The affidavit was then no longer *evidence* in the case. 47 Ark. 31; 14 B. Mon. 158; Mansf. Dig. sec. 382; 3 Met. (Ky.), 24; 4 *id.* 285.

4. An assignment which directs a disposition of the assigned property different from that required by the statute is fraudulent and void. 37 Ark. 150; 47 *id.* 367; 53 *id.* 88; 54 *id.* 471; *ib.* 429. An examination of our statutes makes it clear that the choses in action are not to be sold with the other property. Mansf. Dig. secs. 306, 307, 308, 309; 54 Ark. 421; 4 U. S. App. 68. Sec. 309, Mansf. Dig., from act February 16, 1859, is repealed by implication by secs. 306, 307 and 308 from the act February 23, 1883, so far as selling the choses in action is concerned. The plain meaning of the statute is that the assignee shall collect all the choses in action that he may be able to collect, and shall be credited with such as cannot be collected. 4 U. S. App. 68.

*Yancy & Fulkerson* and *Morris M. Cohn* for appellants in reply.

1. The *record* discloses that a motion for a new trial was filed, overruled, and exception saved. A repetition of these facts in the bill of exceptions is unneces-

sary.   The expressions of this court in 43 Ark. 391 ought to be construed as in 19 Ind. 130, 133. Elliot, App. Pro. sec. 807 ; 50 Ind. 270 ; Manf. Dig. sec. 5159.

2.   But the omission is cured by the *nunc pro tunc* order.   53 Ark. 250 ; 40 *id.* 224–9; 51 *id.* 323 ; 117 *id.* 549; 118 Ill. 160 ; 67 Wis. 229 ; Hayne, New Trial and Appeal, sec. 160.

BATTLE, J.   Hill, Fontaine & Co. brought this action against Churchill Bros., in the Independence circuit court, to recover $4,452.29, and at the same time filed an affidavit to the effect that the defendants had sold, conveyed or otherwise disposed of their property with the fraudulent intent to cheat, hinder or delay their creditors, which was signed and sworn to by A. H. Joblin, as their agent.   A bond was also filed, and an order of attachment was issued, and the property of the defendants was levied on by the sheriff in obedience to the same.

The defendants filed in the circuit court a motion to discharge the attachment, and a traverse of the affidavit which set forth the grounds of the attachment.   After this, on the 19th of November, 1891, the defendants notified the plaintiffs in writing to produce A. H. Joblin, who made the affidavit on which the attachment was sued out, before an officer authorized to take depositions, within the next ten days, for the purpose of cross-examination.   The plaintiffs having failed to comply with this demand, the defendants moved the court to suppress the affidavit, which motion was overruled.

On the 21st of January, 1892, plaintiffs filed an additional affidavit, in which they set up two additional grounds of attachment:   First, "that the defendants, Churchill Bros., had, prior to this suit, removed a material portion of their property out of the State, not leaving enough therein to satisfy creditors"; and, second, "that on the 29th day of December, 1890, after the insti-

tution of this suit, the defendants made an assignment, by means of which they conveyed or otherwise disposed of their property with the fraudulent intent to cheat, hinder or delay their creditors." The defendants also controverted this affidavit.

William C. Ashley, who was the assignee in the assignment made by the defendants, was allowed to intervene.

The plaintiffs took judgment for the amount sued for ; but the traverse of the defendants was tried before a jury. In the trial, A. H. Joblin, who made the affidavit for plaintiffs, testified and was cross-examined. There was also adduced the deed of assignment, bearing date a day subsequent to the institution of this action, by which the defendants conveyed to William C. Ashley, for the benefit of their creditors, all their stock of merchandise in a certain store, and "all their choses in action of every kind, character and description, consisting of chattel mortgages, notes and accounts," in the same store house, of the value of about $8000, in trust, however, "that said William C. Ashley shall be required to sell all the property assigned to him * * * at public auction, within one hundred and twenty days after executing a bond which he is required to execute by law, first having given at least thirty days notice of the time and place of such sale." Other evidence was adduced.

The following, among other instructions, was given, over the objections of the defendants, to the jury : "The jury are instructed that the law regulating the assignment of property for the benefit of creditors, as amended in the year 1883, requires notes and accounts assigned to be held for collection, and not to be sold at public auction within one hundred and twenty days from the filing of the assignee's bond, as other property is required to be ; and the jury are further instructed that the deed of

assignment in this action, in providing and requiring
that all the property assigned, including the notes,
accounts and mortgages, should be sold at public auc-
tion within one hundred and twenty days after the exe-
cution of the bond the assignee is required by law to
execute, was in violation of the law of assignments, and
made the deed fraudulent in law, and they will sustain
the attachment.''

The jury returned a verdict in favor of the plaintiffs
upon the issue in the attachment. A motion for a new
trial was filed by the defendants and Ashley, which
being denied, exceptions were noted; and, within the
time allowed therefor, a bill of exceptions was signed
and duly filed; and defendants and Ashley appealed.

The bill of exceptions, as originally drawn, con-
tained no reference to the motion for a new trial, and
preserved no exceptions to its overruling. To avoid the
effect of this, the appellants, at a subsequent term of
the trial court, after the appeal was taken, procured the
following *nunc pro tunc* order, which they have brought
here by *certiorari:*

''Now on this day comes on to be heard the motion of
the defendants for an order *nunc pro tunc* to amend the
bill of exceptions, filed herein by the defendants, by
inserting therein the facts, as shown by the record of the
court, that a motion for a new trial was duly filed in this
cause, that the same was overruled, and exceptions were
noted thereto at the time of the overruling of said mo-
tion; and the court having heard arguments of counsel,
and being sufficiently advised in the premises, and being
of the opinion, from an inspection of the record of this
court, and its personal knowledge, that the defendants did
file their motion for new trial in apt time, and that said
motion was overruled, and that they duly saved their
exceptions to such ruling in overruling their motion
for a new trial; it is considered and ordered by the court

that said bill of exceptions be taken and considered as. overruled as of the day that the said bill of exceptions was filed, and that the defendants have leave to insert, by interlineation at the proper place in the said bill of exceptions, the following recital : 'And a motion for new trial was duly filed herein, which was by the court overruled, to which ruling exceptions were duly noted by the said defendants.' And to the ruling and decision of the court in granting said motion and in permitting the insertion of said amendment to said bill of exceptions the plaintiffs excepted, and asked that their exceptions be made of record, which is done."

From this order of amendment appellees have taken a cross-appeal.

Three questions are presented for our consideration :

First. Did the trial court err in allowing the bill of exceptions to be amended ?

Second. Did it err in refusing to suppress the affidavit of Joblin ?

Third. Did it err in instructing the jury ?

1. Amendment of bill of exceptions.

First. Did the court err in allowing the bill of exceptions to be amended ? In *Martin* v. *Railway*, 53 Ark. 250, it is said that "all the authorities seem to concur in holding that the court in which the record is made has the same power to amend the bill of exceptions by a *nunc pro tunc* order to cause it to speak the truth that it has over any other part of the record "; but that " it is not the office of an amendment to create or originate something new, but only to perfect that which is imperfectly done." In that case the direction to the clerk in the bill of exceptions to copy certain documents was too indefinite to identify them, and the court held that, if the documents could be identified *aliunde*, the trial court might, after the lapse of the term, by a *nunc pro tunc* order, amend the bill of exceptions so as to correct the

call for them, and thereby make them a part of the bill. In this case the record of the trial court shows that a motion for a new trial was filed, and was denied, and that appellants excepted to the action of the court in denying the same. But there is no reference to it in the bill of exceptions.

It is not within the province of a motion for a new trial to bring upon record irregularities that occur in the course of a trial. The facts constituting the error complained of, together with the exceptions to the ruling of the court, should be set out in the bill of exceptions. The motion for a new trial serves the purpose of an assignment of errors. All exceptions taken and not embodied in it are waived. *Johnson* v. *State*, 43 Ark. 391. It is the final act by which the exceptions are made available. A bill of exceptions without a reference to it can serve no purpose—is incomplete.

In the case before us the appellants undertook to save the exceptions which they had taken. They embodied them in the motion for a new trial. In an effort to make them available for the purpose of an appeal to this court, they incorporated them in a bill of exceptions, and presented it to the judge for signature, and for the same purpose he signed it, and ordered it made a part of the record. But it failed to accomplish its object, by reason of there being no reference in it to the motion for a new trial. It was incomplete, and a fit subject for amendment. The incorporation in it of the motion for a new trial, the denial thereof, and the exceptions thereto, would not constitute a new bill of exceptions, but the one on file would thereby be made complete and available, and the object of the appellants in presenting, and the judge in signing, it would be accomplished. In furtherance of justice, and according to the principle on which *Martin* v. *Railway Co.* rests, the amendment directed by the *nunc pro tunc* order should have been made.

2. Suppress-
ing affidavit
for attach-
ment.

Second. Did the court err in the refusal to suppress the affidavit of Joblin, on which the attachment was based? Appellants rely on section 601 of the Code of Practice in Civil Cases to support their motion. The intention of this section is shown by the sections preceding it. Section 596, under the head of evidence, provides: "The testimony of witnesses is taken in three modes: First, by affidavit; second, by deposition; third, by oral examination." Section 600 then provides in what cases an affidavit may be used as testimony. It says: "An affidavit may be read to verify a pleading, to prove the service of a summons, notice, or other process in an action, to obtain a provisional remedy, a stay of proceedings, or a warning order, or upon a motion, and in any other case permitted by law." Section 601 then says: "Where a provisional remedy is granted upon an affidavit, and a motion is made to discharge or vacate it, the party against whom it is granted may, by written notice to the party by whom it was obtained, or by an order or rule of the court, require the production of the person who made the affidavit for cross-examination; whereupon the party notified shall produce the affiant within ten days before an officer authorized to take depositions, at the time and place of which he shall give the opposite party three days notice. If the affiant is not produced, his affidavit shall be suppressed; and if produced, he may be examined by either party."

It is only when a motion is made to discharge or vacate a provisional remedy, can the affidavit, upon which it was granted, be suppressed under this section. It can be suppressed only when it might be used as evidence, and only then when the party who has obtained the provisional remedy has failed to produce the affiant for cross-examination, after he has been required to do so. Why should the affiant be produced for cross-examination after the motion to discharge has been

made? The only purpose the cross-examination can serve is to ascertain what the affiant knows, his means of information, and his credibility. The information thereby acquired shows the value of his affidavit as evidence. If, upon cross-examination, it be shown that it is false, section 601 does not say that the provisional remedy shall be discharged or vacated. It is only when he fails to appear for cross-examination that his affidavit is suppressed. Why is it then suppressed? Was it for the purpose of discharging the provisional remedy? If so, why is it not discharged when the affidavit proves, upon the cross-examination of the affiant, to be false or worthless? It is only after the motion to discharge has been made, and he has failed to appear for cross-examination, that his affidavit is suppressed. Why? Because he has failed to give the party demanding his appearance an opportunity to show the value of his affidavit by cross-examination. The statute in that case makes the penalty of the failure to produce him commensurate with the wrong done by his non-appearance; and suppresses the affidavit to the extent, and only to the extent, it can be used as evidence.

In the case before us the appellants filed their affidavit denying the statement of the affidavits upon which the attachment was issued. When that was done, the attachment, under the statutes, was controverted, and the affidavits upon which the order of attachment was issued and the affidavits of appellants became the pleadings in the attachment, and had and have no other effect. The affidavit upon which the attachment was granted was suppressed, to the extent it could be used as evidence, by operation of law. Mansfield's Digest, sec. 381.

The motion to suppress the affidavit of Joblin was properly denied.

3. Choses
in action as-
signed should
be collected,
not sold.

Third. Did the court err in instructing the jury? It has been repeatedly held by this court that a deed of assignment which directs a disposition of the property assigned in a manner different from that prescribed by the statute is fraudulent, and a ground for attachment. *Raleigh* v. *Griffith*, 37 Ark. 150; *Collier* v. *Davis*, 47 Ark. 367; *Gilkerson-Sloss Com. Co.* v. *London*, 53 Ark. 88; *Penzel Co.* v. *Jett*, 54 Ark. 429; *Lincoln* v. *Field*, *ib.* 471. Is the deed in question defective in this respect?

Section 309 of Mansfield's Digest provides : "Said assignee shall be required to sell all the property assigned to him for the payment of debts, at public auction, within one hundred and twenty days after the exetion of the bond required by this act, and shall give at least thirty days notice of the time and place of such sale." Section 306 provides : "Such assignee shall, at the first term of the court after one year from the date of said assignment, and at the corresponding term of said court every year thereafter until the proceeds of the property assigned be disposed of for the benefit of creditors, present to the court a fair written statement, or account current, in which he shall charge himself with the whole amount of the property assigned, including all debts due or to become due. and credit himself with all sums of money expended." Section 307 then provides : "Such account shall be carefully examined by the court, and upon such examination the court shall allow the assignee credit *for all debts with which he stands charged which the court shall be satisfied could not be collected.*" This last section was enacted subsequently to section 309, and repealed or amended the latter section to the extent they are in conflict, although the latter was not mentioned in the act of which the former was a part. *Scales* v. *State*, 47 Ark. 481; *People* v. *Mahaney*, 13 Mich. 481, 496–7; *Lehman* v. *McBride*, 15 Ohio St. 573; *Shields* v. *Bennett*, 8 W. Va. 74,

87; *Baum* v. *Raphael*, 57 Cal. 361; *Denver Circle R. Co.* v. *Nestor*, 10 Col. 405; *Evernham* v. *Hulit*, 45 N. J. L. 53; *Sheridan* v. *Salem*, 14 Ore. 328, 337; *Davis* v. *State*, 7 Md. 151; Cooley, Const. Lim. (6th ed.), 182.

Construing sections 307 and 309 together, it is manifest that an assignee is not required to sell choses in action within the one hundred and twenty days. "The fact that the assignee is to stand charged with the uncollected" debt for more than a year after the execution of the assignment is wholly incompatible with the idea that he is to sell the notes and accounts at public auction within the one hundred and twenty days; because, if he is required to sell them within that time, he could not have them on hand a year after. Under section 307, "he is not entitled to credit for the uncollected debts with which he stands charged until he satisfies the court that they 'could not be collected.'" The plain meaning of the statutes "is that the assignee shall collect all the choses in action that he may be able to collect, and shall be credited with such as cannot be collected." Any construction placed upon the statutes of assignment which would make it the duty of the assignee to sell them as other property is required to be sold would be disastrous to all parties interested in assignments. *Hill* v. *Woodberry*, 4 U. S. App. 68.

In the assignment in question the assignor, after describing the property assigned, including "all their choses in action of every kind, character and description, consisting of chattel mortgages, notes and accounts," required the assignee to sell *all* the property assigned to him * * * at public auction within one hundred and twenty days after executing a bond which he is required to execute by law, first having given at least thirty days notice of the time and place of such sale." The words "all the property assigned to him" necessarily included the choses in action. The assignee

was required to sell them.    The language of the deed to that effect is clear and unambiguous, and there is nothing in it to indicate a contrary intention.

The instruction of the trial court as to the effect of this direction in the deed was properly given.

Judgment affirmed.